First case on our call today. Agenda number one, number 105-314 and 105-316, Consolidated, People of the State of Illinois v. Daryl Sutton. Counsel, you may proceed. Good morning, Chief Justice, Your Honors, Counsel, and may it please this Honorable Court, I'm Cook County Assistant State's Attorney, Veronica Caldron-Malavia, representing the people of the State of Illinois in this matter. The people challenged two appellate court rulings made in their interlocutory appeal. First, the people maintained that, pursuant to Wilson, the appellate court erred when it failed to remand the case for an evidentiary hearing on eyewitness David Janik's identification of defendant. The people also appeal the appellate court's determination that Mr. Janik's out-of-court statements made in the ambulance were testimonial under Crawford and Davis. I will first address the remand issue. Your Honors, there is no question the mistakes were made below during the course of the first trial. Prior to defendant's first trial and during direct appeal, the people did not ask for a hearing pursuant to People v. Wilson to see if Mr. Janik's identification of defendant was based on his pre-hypnotic recall. But, Your Honors, defendant has been given his remedy, a new trial. Now we're here at a pre-trial stage. We have opportunity to properly litigate the issue, to see if, to make sure that hypnotically influenced evidence is not admitted at trial, but to also make sure that competent evidence is not erroneously suppressed at this murder trial. Yes, Your Honors, defendant does have a right to a free trial, to a fair trial free of hypnotically influenced evidence, but the people have the equal and corresponding right to admit competent evidence. In an effort to avoid such a hearing, defendant raises several procedural bars to the people's claim. Defendant first argues that this is not a proper interlocutory appeal and that the people have forfeited their claims. Your Honors, the public court properly rejected both defendant's jurisdictional argument and forfeiture claims and considered the merits of the people's argument. The public court noted that throughout the history of this case, the people have always sought to admit Mr. Janik's identification, and they did not sit on their rights. Defendant also argues that the law of the case doctrine and the doctrines of collateral estoppel and res judicata bar this court from considering our claim. Your Honors, these are equitable doctrines, and this court is now bound to these doctrines because this is the first time this court is considering the merits of the people's claim. And as I will demonstrate below, the public court's refusal to remand for Wilson hearing meets the criteria of a palpably erroneous exception to the law of the case doctrine. Also, the doctrines of collateral... Your Honor, you didn't seek an evidence for hearing on the basis of Wilson in the first... Your Honor, we did not. We made a mistake. There was an error, and the court did not go to a hearing and thought it was best for the jury to resolve the issue. However, defendant has had his remedy, and his remedy is a new trial. And now we have the opportunity to properly litigate the issue. And the issues of the doctrines of collateral estoppel and res judicata... Does this have any consequences for your failure to raise it during the first... We're retrying the defendant for first-degree murder monocriminality. Those are the consequences. And so, therefore, the issues here should be considered by this court. Collateral estoppel and res judicata are shields to protect the defendant from abusive practices or repetitive litigation. Here, we have not had a full litigation of the issue, nor have we had a resolution by the trial court. Defendants should not use collateral estoppel and res judicata as a sword to bar the litigation of the issue on the merits. Counsel, is the... At least one of the suggestions that Janik independently recalled the crime scene seems to be the sex-motivated report and sketch. Do you agree with that? One thing that the appellate court didn't discuss or didn't recognize is the fact that there's a February 28, 1991 report that includes a pre-hypnotic recall, a description of the assailant. Right. The state did not include those documents in the record on appeal, though, did they? On this appeal, no, they did not. Let me ask a couple questions and then you... Were those documents admitted at defendant's trial? They were a basis for impeachment of one of the detectives. So they weren't substantively admitted? No, they were not. Are those documents... You didn't include those documents in the record on appeal. They weren't admitted at the defendant's trial. Were they raised in the appellate court? They were referred to in the appellate court, both on direct appeal. The people always said that Mr. Janik had a pre-hypnotic recall on February 28, 1991. You said they were referred to. Were they raised as an issue? Was the issue of the documents raised in the appellate court? No. I'm not sure I understand your question. Their admission? Well, I'm trying to figure out how... I mean, that's at least one very important part of your argument with respect to independent recall. Yes. How does this court get to those? If they weren't substantively admitted at the trial court, if they weren't even raised in the appellate court or this court, how do we get to that issue? At least with respect to those documents. Well, Your Honor, there was no hearing below. We were denied the hearing, so they weren't admitted. However, they were referred to in the appellate court, and there are evidence that indicate that Mr. Janik did have a post-surgery pre-hypnotic recall, which triggers a Wilson hearing. So these statements provide a basis that there should have been a Wilson hearing, because he did have a pre-hypnotic recall. In fact, under Wilson and Zayas, if you read those two cases together, they establish two inquiries. The first inquiry, if you want to admit post-hypnotic testimony, is did that witness have a pre-hypnotic recall? The second inquiry would be, is the proposed post-hypnotic testimony based solely on that pre-hypnotic recall? Here, the appellate court erroneously assessed the first one by ignoring exactly the existence of the police report as well as a sketch that Janik provided prior to entering hypnosis. But the appellate court completely bypassed the second inquiry and made a simple comparison of a February 14 description and a September 6, 1991 description. Okay, are you asking this court then, since there wasn't a hearing below, to consider the documents even though they weren't in, they're not in the record on appeal, are they? No, they're not a record on, they weren't a record on direct appeal. However, there's no dispute, the defendant does not dispute that these documents exist, and they show that Mr. Janik had a pre-hypnotic recall. The sketch is also, there's no dispute that the sketch exists. And these two factors indicated, it should have indicated to the appellate court, that a hearing was needed to resolve exactly, resolve whether the pre-hypnotic recall is the basis of Mr. Janik's identification of defendant. And a hearing is also needed to answer the second inquiry. And the record is incomplete, because there's no expert testimony to establish whether Mr. Janik's identification of defendant in the lineup, which took place seven years after he participated in hypnosis, is a product of his pre-hypnotic recall or a product of hypnosis. Also, there's no expert testimony to see if Mr. Janik's identification at a potential trial, now that will take place 18 years after he participated in hypnosis, is a product of his pre-hypnotic recall. There has never been a legitimate answer to this second question. And we would ask that, pursuant to Wilson and Zayas, that this court remand the case for the trier effect to determine the extent and the scope of Mr. Janik's pre-hypnotic recall, because it wasn't fully explored. As Justice Thomas, you noted that the police report and the sketch were not part of the record, since it was not probably litigated before the trial court. And also, with a hearing, the trier effect would be guided by expert testimony in determining the ultimate issue. Your Honors, the second issue deals with the admission of Mr. Janik's statements to the police in an ambulance. The appellate court determined that these statements were testimonial. However, first the appellate court properly determined that the statements Mr. Janik made at the scene were to address an ongoing emergency under Davis and Crawford. Davis and Crawford establishes an objective test. Essentially, Your Honors, the inquiry is whether a reasonable person would recognize that the conversation viewed objectively establishes that elicited statements were necessary to resolve an ongoing emergency, rather than establish past facts for a future trial. This analysis does not include the subjective belief of either the declarant or the questioner. There is no subjective inquiry in this test. Moreover, Your Honors, the phrase ongoing emergency, by its very terms, includes, under appropriate circumstances, a course of events over a period of time. The key is not whether a crime is completed. The key is whether the police are facing an ongoing emergency. The phrase used by the United States Supreme Court is not ongoing crime. It's ongoing emergency. To support the appellate court's determination that the statements made in the ambulance were testimonial, the defendant points to the fact that in Davis, the United States Supreme Court found that the emergency in the 911 call case ended when the boyfriend offender left the house. Your Honor, contrary to defendant's suggestions, the location of the offender is not the only factor to consider in determining whether an ongoing emergency exists. It should be considered by looking at the totality of the circumstances, including the nature of the offense. The circumstances in Davis are dramatically different than those in this case. In Davis, it was a domestic violence case with only one intended victim, the girlfriend. The offense allegedly took place in the confines of a home. There's nothing in Davis to suggest that anyone but the girlfriend was in any danger. So when the boyfriend left, Your Honors, it's logical to conclude that the emergency ended. Here we have strikingly different circumstances. Here we have a situation where the public is in danger, and we have a victim who is facing an extreme medical emergency. The police faced a random attack on a public street by an unknown offender who fled. Although Janet may have been safe in the ambulance, it is the responsibility of the police to make sure that everybody else in the neighborhood is safe by apprehending this unknown, unpredictable armed offender. There's no way for the officers, Your Honors, to know if they are facing an isolated incident or if this is the beginning of some horrific crime spree. Immediately after speaking to Janet, the police radio in a description. However, Your Honors, that description was general. A reasonable officer would want to confirm that description or get more of a description. Especially with a victim who has a gunshot wound to the head. You want to make sure that the information is received is accurate. The police would not want to apprehend the wrong person. So therefore, the officer wisely questioned Mr. Janik in the ambulance. The information that Mr. Janik gave concerning the location of the abduction, the route that the assailant took, provide clues as to what is this, as clues that would help apprehend the assailant. Also, his account of the crime provide details and may help the police determine whether this is an isolated incident or potentially a crime spree. Viewing the totality of these circumstances, there is no question that the police there had to make quick decisions in order to address an ongoing emergency. And the more information that they had, the better suited they would be to address that emergency. How would you limit it, if at all, by the fact that in every kind of unsolved violent crime, you'd have those similar issues, protection of the public, you know, getting more information and so forth. Wouldn't that be very wide, I mean a very broad kind of a test? Well, this is a case specific analysis that we should make and we should look at it in hindsight. Okay, this was an isolated incident, but here what the officers were facing, right, was a random act with an unpredictable defendant who was unknown and who was on foot. You know, who had just raped and murdered. This situation, these circumstances are extraordinary, they're unusual. They don't happen every day when you have a combination of such extreme violence. And so you can't look at it in hindsight, you have to look at the objective circumstances that were facing the police at that juncture. And viewing it objectively, these circumstances clearly established that the police were facing an ongoing emergency. And therefore these statements were not testimonial. And also it's important to consider that Mr. Janik was not a bearing witness. Viewed objectively, the fact that Mr. Janik had a gunshot wound to the temple, objectively that person would be more concerned with fighting for his life, not providing past evidence for some future trial with an unknown defendant who wasn't captured yet. Moreover, there was no formality in the questioning. This is nothing like a station house interrogation or an interrogation that leads to an affidavit. There was absolutely no formality. Very clearly, the statements were clearly elicited to address an ongoing emergency. Was there some testimony that the defendant shot Janik so that there would be no witnesses to the crime? Yes, Your Honor. And in view of that, doesn't that in some way limit his objections under the Crawford and Davis on the forfeiture by wrongdoer? Your Honor, it is the people's position that even if this court were to find a confrontation violation, that the defendant had forfeited by his wrongdoing that confrontation claim. Because there's only one reasonable inference that could be from the facts of this case that would be concluded that the defendant shot Mr. Janik in order to silence him. Who gave that testimony that Janik was shot so that he would be silenced? It's a reasonable inference from the facts that were assessed at the trial. So no one specifically said that? No. There are reasonable inferences. And the inferences come from whose testimony? It comes from the circumstances established, Mr. Janik's out-of-court statements, as well as the fact that it's clear that, you know, Ms. Janik was found in the front seat of the car, and Mr. Janik came from the trunk. So he was in the trunk, and the reasonable inference that he was shot in order to silence him from testifying against the defendant for the rape and murder of Ms. Rinaldi. And that's the argument that was made by the State in the closing argument? Not in the closing argument. It was the argument that was made to the trial court in addressing the defendant's motion to bar these out-of-court statements under Crawford, which Crawford was not issued yet during the first trial. And therefore, based on the arguments that the people make today, as well as those contained in their briefs, we ask this Court to overturn the public court's determination that these statements were testimonial, as well as to remand the case for a Wilson hearing to finally determine whether Mr. Janik's identification of the defendant is based on his independent pre-cognitive recall. Thank you, Counsel. May it please the Court, Sean O'Toole on behalf of the defendant, Daryl Sutton. I'd first like to respond to the State's argument regarding the admission of the, or the request for an evidentiary hearing, then move on to the issue of the admission of the witness's out-of-court statements. The State's request for an evidentiary hearing must be rejected. The appellate court has twice properly ruled that David Janik's identification of the defendant was influenced by hypnosis and is not solely rooted in pre-hypnotic independent recall, and this opinion is amply supported by the record. Moreover, defendant requests that this Court find the issue has been procedurally defaulted. First of all, the evidence at trial and at the pretrial hearings established that no hearing is necessary, and the State's repeated insistence that Janik regained his memory prior to entering hypnosis is conclusively rebutted by the record. The record establishes, and the State does not dispute, that Janik suffered from amnesia following the offense, woke up in the hospital without any memory of what happened the night of the offense. Doctors testified that he had amnesia. Janik testified that he sought out a psychotherapist in the hospital because he wanted to regain his memory, and that after he left the hospital, he was given a suggestion of a hypnotherapist by a friend of his because he wanted to recall the night of the offense. Therefore, it's clear that post-February 28th, Janik still did not have a memory of that night. Now, this is further corroborated by his testimony that he regained his recollection of the offender, while he was in therapy, several months later. This testimony is corroborated by the doctor's notes, which are included in the record from the pretrial hearing, or from the pretrial arguments, where the notes indicate that the hypnotic sessions focused on the offender's face, facial features, and there were statements made by Janik to the hypnotist that he still could not remember the offender, what the offender looked like. Do you agree, counsel, that Janik independently recalled the crime scene, at least with respect to the sex-motivated reporting sketch? No, Your Honor. As you mentioned, the report isn't even part of the record, so we don't know what that information actually says, what it's based on. It was used to refresh the detective's recollection. And the state's argument with regard to the sketch is even more speculative. The detective, when he first saw the sketch, did not even know when it was created. He just guessed that it was created prior to hypnosis because it was attached to this report. But Janik had actually testified that he remembered making that sketch. He testified that the sketch occurred after he remembered what the offender looked like during hypnosis, and that he requested that an artist friend of his draw the sketch, completely undermining the detective's later testimony that he created the sketch with Janik. Janik explicitly stated he did not take part in any sketch with this detective. Even your position is that we shouldn't consider it because it's not part of the record. Even if we do, it doesn't support the independence. Exactly. And remember, the standard is that the testimony has to be solely rooted in pre-hypnotic recall. Given the facts of this case, it's impossible for the state to prove, regardless of what this sketch and what this report say, that the lineup ID was solely rooted in pre-hypnotic recall, especially where the witness himself testifies that the recollection of the offender occurred during hypnosis. And the precedent the state relies on Wilson, which is completely distinguishable, because there the lineup, the license plate, was the only subject of the hypnotic sessions. And when the state tried to introduce the lineup ID in that case, there is no record on the evidence that the defendant had amnesia, but the court wanted to protect the defendant's rights and have the state establish a pre-hypnotic recall. And I would just note that in Zayas this court did resolve the issue of post-hypnotic testimony without remanding for an evidentiary hearing. So obviously it's not a requirement. Although I would also just note that the state's forfeiture argument, response to the forfeiture argument, the state may have always requested that this evidence be admitted, but has never requested an evidentiary hearing. And that's the narrow question before this court, whether this court should remand for an evidentiary hearing. And the state has clearly forfeited that right. In fact, it actively fought against the presentation of expert witnesses at all the hearings involved and specifically stated that expert testimony could not clarify this issue. And actually that position does correspond with Zayas, which stated that an expert could never testify that any suggestion took place because it's oftentimes subconscious. I'd like to move on to my argument regarding the prior statements. The trial court properly excluded the prior statements of the witness, and this court should reverse the holding in the appellate court that the statements were admissible under the spontaneous declaration exception of the hearsay rule and admissible under Crawford. Briefly, I'd note that the defendant maintains that these were not spontaneous declarations and therefore may be barred on those grounds first. Should this court find that they are spontaneously made, they should also be barred because these are testimonial statements that the defendant will not have the opportunity to cross-examine the witness on. This court should reverse the appellate court's finding with regard to the initial statements at the scene and uphold its determination that the statements in the ambulance were testimonial while upholding the trial court's ruling that these are the exact type statements covered by the confrontation clause. As the United States Supreme Court has held, statements to law enforcement unless being made during an ongoing emergency are testimonial for purposes of the confrontation clause. Here, both statements were made to the police officer beyond the time the United States Supreme Court defined an ongoing emergency. And for the definition of ongoing emergency, I think the Davis court's discussion of the 911 call is instructive. There, the court held that the statements made on the scene were testimonial or, I'm sorry, non-testimonial because the clarent was making statements while the offender was threatening her. The statements constituted cries for help. The statements were made as the emergency was happening, and they were in response to the question what is happening rather than what happened. They were not describing a past crime, but they were describing ongoing events, and therefore they were present tense statements. And the court held that those statements were non-testimonial, but that once the offender left the scene and the declarant was no longer facing a threat, the statements became testimonial. The court said the conversation evolved into one giving testimonial statements. And from this analysis, you can tell that the court drew the line of demarcation between testimonial and non-testimonial statements very close to the end of the actual offense being discussed. And the state's contention that this is a police emergency is conclusively rebutted by the Davis court's analysis of the 911 call, where the court said, gave the four factors it relied upon for declaring this to be an ongoing emergency. It said it described events as they were happening. Here, Janik was describing events that happened in the past. A reasonable listener would have believed the declarant faced an ongoing emergency because there were calls for help, not the police. As you noted, Your Honor, the state's standard would leave open-ended investigations. Any time the offender is on the loose, the statements would be testimonial. I'm sorry, non-testimonial, regardless of whether they're an analog of courtroom testimony. And therefore, when a statement is given to a police officer, the line of demarcation should be very close to the crime. The statements here established facts of a past crime in order to identify the perpetrator and the product of such interrogation, whether they're reduced to writing signed by the declarant or embedded in the memory of an interrogating officer, as the court held in Hammond, is testimonial. Furthermore, because these testimonial statements won't be subjected to cross-examination, the defendant asks that these statements be barred under Crawford. A constitution may not require successful cross-examination, but it requires that the defendant have the opportunity for effective cross-examination. And I think this Court's holding in Zayas is instructive, where this Court held that previously hypnotized witnesses are virtually immune from cross-examination. For all the reasons this Court listed in Zayas, where it held that hypnotically induced testimony is per se inadmissible in Illinois. Namely, by its very definition, hypnosis includes alterations in memory, increased susceptibility to suggestion, production of responses and ideas unfamiliar to him in his usual state of mind. And this goes beyond the typical memory loss case, which I know the U.S. Supreme Court has addressed in Owens and Fenster, where the Court held that simple memory loss does not bar a defendant from cross-examining the case. This involves memory loss coupled with a hypnotically restored memory. And therefore, the reasons the memory loss cases do not control is because in Owens, the Court held that the defendant would have unfettered cross-examination of the forgetful witness, and the witness's testimony would be reliable based on the oath given by the witness, and the trier of fact could examine the witness's demeanor. Here, hypnotically, a witness who submits himself to hypnosis destroys both the oath and the demeanor aspects of that, as well as the unfettered cross-examination. With regard to unfettered cross-examination, the defendant cannot elicit hypnotically induced testimony, therefore limiting the ability to impeach. With regard to the oath, the witness does not know how his memory is restored and can't differentiate between pre-hypnotic memories and current memories, as this Court held in Zais. Therefore, the oath is essentially meaningless in this case. The defendant doesn't know if he's telling the truth or not. With regard to the demeanor of the witness, this was one of the Court's primary reasons for holding hypnotically influenced testimony to be, per se, inadmissible in Illinois. The witness thinks the witness has restored confidence in his memory, and he can't differentiate between information suggested and information arising during hypnosis sessions. Therefore, the trier of fact cannot adequately judge his demeanor. So the safeguards that the Owens Court found in the typical forgetful witness case are not present when that witness's memory has been restored by hypnosis. And I would note that there's the State's contention that once the witness takes the stand, he's subject to cross-examination for purposes of the Confrontation Clause. It's not the case. Owens himself noted that the possibility that limitations on the scope of examination may undermine the process to such a degree that meaningful cross-examination within the intent of the Sixth Amendment no longer exists, similar to cases where the witness pleads the Fifth Amendment or where the trial court limits the testimony. So just because the defendant can get on the stand here, that doesn't mean he can be cross-examined as to his prior statements. Briefly, I would like to address forfeiture by wrongdoing, which the State contends relieves the prior defendant of his ability to raise this issue. Initially, there's a causation issue here, because the defendant is not arguing that the witness is unavailable due to his amnesia, which was the result of the gunshot wound. The defendant is arguing that the witness is unavailable because he underwent hypnosis. Secondly, the State cannot demonstrate forfeiture, as contemplated by the U.S. Supreme Court in Giles and as set forth by this Court in Rolandus G. The Court in Giles limited the doctrine to as it existed at the time of the framing, which means that common law and early American law existed essentially as a witness tampering law. It applied only when the witness was detained or kept away from the proceedings by the prisoner. This Court acknowledged in Rolandus G. that conduct involved forfeiture involves witness tampering and conduct designed to prevent a witness from testifying, thwart the judicial process, or procure the witness's absence from trial. There, the Court admitted the statement, despite the fact that the defendant's alleged conduct could reasonably have expected to cause trauma to the child witness and making that witness unavailable. And on top of that, the defendant in that case made the witness swear not to tell anyone, but this Court found no evidence that that act was done in contemplation of future trial. Similarly, this case has even less evidence of an attempt to tamper with a witness or any evidence that the act was committed in contemplation of preventing a witness from testifying at trial. The State has provided no evidence, other than its inference, that this act was done by the defendant with a future trial in mind. How else would you establish an intent, if not by inference? Well, there could be statements. For instance, in the... By whom? By the defendant. For instance, stating that... I intended to. Right. Well, don't testify against me. And I think in Rolandus G., there was a borderline case there, because the defendant actually went up to the witness and said, don't testify against me. And I'll also note that in most of those common law cases, those English cases and early American cases that Justice Scalia relied upon in trials, those cases involved actual intimidation and bribery, and not necessarily actual murder. So it was a witness tampering where you actually have a witness who's about to testify against you in court. In this case, perhaps right for just an extension of what seems to be a good, sound reasoning for limiting the testimony, the objections to testimony. No, Your Honor. I don't think that the... Because it involves what the court deemed a constitutionally repugnant act, which is a judicial determination of defendant's guilt before trial, so that it may strip the defendant of a right, which the Constitution says is necessary to determine the defendant's guilt. And therefore, where the state is basing its argument on inferences, and this case involves the conduct that occurred without any pending trial, or what we would call typical witness tampering cases, this court should be very careful before expanding any definition of the forfeiture rule. This is a fundamental constitutional right that the state seeks to strip from the defendant without an actual jury determining his guilt. For these reasons, I would ask that this court uphold the appellate court's ruling to bar the obnoxiously induced testimony, and reverse its ruling admitting the prior out-of-court statements. Your Honor, the defendant wants you to decide this case with respect to the pre-hypnotic recall on a cold record. He has to remember that these two witnesses testified 10 years after the crime. Mr. Janik initially said that he thought he participated in hypnosis in February,  however, through Dr. Reese's notes, he admitted that it was in March 15th. So the events are clearly, these issues are issues that should be determined with an evidentiary hearing. But the record does establish that Mr. Janik, through the passage of time, began to recall his assailant prior to entry into hypnosis. And that's what the 1991 report establishes, as well as the sketch that was sent to the state police 13 days before, that there exists a pre-hypnotic recall triggering a Wilson hearing. Also, Your Honor, listening to the defendant's entire argument, it's apparent he has one singular goal. And that goal is to completely silence David Janik. Defendant doesn't want Janik to take the stand and testify about his post-hypnotic identification. He also doesn't want Janik to testify now about his pre-hypnotic recall. In other words, he doesn't want any other witness to get on the stand and testify as to his out-of-court statements that he gave the police. He wants to remove Mr. Janik entirely from this case. Your Honor, if the defendant is right, three things must happen. First, this court must overrule Wilson, which was explicitly reaffirmed by Zayas, because the defendant's position is that once a witness is hypnotized, he can no longer testify. So a Wilson hearing is unnecessary. This court must also alter the Federal Constitution Confrontation Clause regarding cross-examination, because according to the defendant, a witness who is actually available to take the stand is no longer subject to cross-examination. That changes the Federal definition of the right to confront. With respect to hypnotically influenced testimony, it coexists with the Confrontation Clause. In fact, in the Federal courts, there is no per se inadmissibility. Hypnotically, post-hypnotic statements are not per se inadmissible like they are in Illinois. The defendant also wants this court to redefine the ongoing emergency. I will first address the first two points, because the Wilson hearing and the defendant's argument concerning the Confrontation Clause are interrelated. In essence, the defendant, as he did below, argues that under Zayas and Wilson, Mr. Janik is rendered legally incompetent. He can't take an oath, he can't be sworn in, and because he went through hypnosis. However, Zayas and Wilson merely state that he cannot testify as to his hypnotically enhanced memories, if there are any. The fact that Mr. Janik underwent history does not render him unavailable or not subject to cross-examination or an incompetent witness. Mr. Janik, prior to undergoing hypnosis, did not remember making these statements to the police. After he underwent hypnosis, he still didn't remember making these statements to the police. This is nothing more than an always memory loss. Mr. Janik's memory was not, or lack of memory, was not impacted by hypnosis. There is no confrontation violation. Moreover, there is nothing in Illinois, no case, no statute, no rule, no constitutional provision, that bars Mr. Janik from taking a stand. In other words, it would be a travesty of justice to hold that Mr. Janik is unavailable because he participated in hypnosis subsequent to his outcries to the police. With respect to defendant's testimonial ongoing emergency argument, defendant proposes a very narrow test that wants this court primarily to focus on the location of the offender and the safety of the victim. In doing so, defendant ignores the broader perspective of a police, which is a reasonable police officer would want to respond to the circumstances to the ongoing crime before him in this case-specific situation. In this case, subjective circumstances include a random attack of extreme violence in a public place against two complete strangers, one who he rapes and murders and the other who he shoots point-blank in execution style and then finally flees on foot in a residential area. These objective circumstances clearly show that there was an ongoing emergency. And defendant also argues that he says a line of demarcation must be very close in time to the crime itself. But that's what we have here. It was only minutes after the crime that the police spoke to Mr. Janik at the scene and like 17 yarders at the ambulance. This is very close to this horrific crime. Talking to a victim who faced a very serious medical emergency. With respect to the forfeiture argument, there is a causal connection here. If defendant didn't shoot Mr. Janik in the head, he would have now lost his memory after surgery and he would not have had to undergo hypnosis. Also, let's look at Reynolds, which is the case that the court relied on in Crawford to identify common law. What do we have there? We have there a servant, the police, going into a home, knocking on the door and asking to serve a subpoena. Is the victim there? No. Do you know where she is? No. That was the only act that defendant there did and that was found to be forfeiture by wrongdoing. What do we have here? We have someone who after raping and murder, who placed the witness, Janik, in the trunk while he raped and murdered his girlfriend. At that point, there was no need for Janik, Janik did not pose any danger to defendant nor did he pose any impediment for his escape. But nonetheless, defendant got up, went around to the trunk, opened it and shot Mr. Janik in the head. There's only one reasonable inference and that's the intent to silence him. The issue of intent, there's rarely direct evidence. It's always a reasonable inference. And also, there's nothing like Giles. And Giles is the murder itself. Here we have, the murder is of Monica Rinaldi and the rape of Monica Rinaldi. Mr. Janik was silenced because he was a witness. There were no charges in this case that dealt with that, with the crimes related to Mr. Janik. Deperiatos, based on the arguments made today and the people's brief, the people asked that this court remand the case for Wilson hearing and reverse the political determination that the statements Mr. Janik made in the annuals were testimonial. Thank you, counsel. Mr. O'Toole, you may proceed. Just briefly in response to the state's argument on the prior statements, the state's argument that the witness will be subject to cross-examination, the defendant does not contend that this witness is legally incompetent to testify. It's simply that he can testify, but he cannot testify in a hypnotically influenced testimony. But he also cannot testify beyond the limits necessary for cross-examination as contemplated by the Sixth Amendment. As for the state's definition of ongoing emergency, Davis simply did not ask whether the police faced an ongoing emergency. The reason Davis found an ongoing emergency during the 911 call is because the declarant faced an emergency. Here the declarant was describing past events regarding, in response to the police question, what happened. I'm sorry. Counsel, didn't Janik testify that he could not recall the statements, either in the ambulance or the initial statements, even before hypnosis? Wasn't that his testimony? Did he lack recollection of those statements even before hypnosis? Well, before hypnosis it doesn't appear he recollected anything. According to the state, he started to regain some memory of the description. But as far as the statements themselves, I don't think he's ever recalled making them. Counsel, do we know the specific moment when he lost his memory? In other words, is it possible that he had his memory at the time of the ambulance statements and lost it sometime before he woke up in the hospital after that? Well, I think he did. I mean, when he was answering the police questions in the ambulance, he could recall the events, obviously. He gave an extensive narrative of what happened. And those are testimonial statements because they describe past events. He woke up in the hospital without a memory. So it was apparently sometime during surgery, which caused him to suffer amnesia, although there was no neurological damage. As far as the state's argument that the statements here. My point in the earlier question is that if Janik's inability to remember his statements to the police at the scene or in the ambulance were not hypnotically influenced, wouldn't that support the state's argument that he is available for cross-examination, that the fact that hypnosis was somehow involved doesn't go hand-in-hand with the fact that he's not available for cross-examination if it wasn't even a portion of his failure to remember the statements? Well, again, the Owens case was predicated upon the fact that the defendant would have unfettered cross-examination to explore the witness's memory, to probe recollections, to compare statements made, to rely on the oath taken by the witness, and to rely on the witness's demeanor. Here, because the witness was subjected to hypnosis on the very subject matter of those prior statements, any answers he gives with regard to the accuracy of those prior statements will be influenced by hypnosis. And it's on those grounds that I submit that the defendant cannot adequately cross-examine the witness under the Sixth Amendment. With regard to the ongoing emergency, the state argues that the statements here were close to the crime, but they were not during the crime. And that's the standard set forth by Davis. As I said, the line drawn by the Davis court was when the offender left the scene. Once that offender leaves and the declarant is providing statements, it's describing past events. And the description of the offense and the offender are the exact statements that are typically used at trial. And those are the types of statements the Confrontation Clause is concerned with. As far as the causal connection, the state says that if not for the gunshot wound, he wouldn't have lost his memory. If not for it and lose his memory, he wouldn't have had to submit to hypnosis. Again, that's an intervening cause, similar to the cases in which a defendant absconds and while he's delaying his trial, a witness dies. There's just not a causal connection there. As far as the state's reliance on Reynolds, Reynolds is an exact witness tampering case the Confrontation Clause is designed or I'm sorry, the forfeiture by wrongdoing is designed to prevent. There the judicial proceedings have begun. The witness was trying to be served with a subpoena and the defendant had interfered with the serving of that subpoena. That's a typical witness tampering case. And that's according to Giles and Rolandus-G, that's what forfeiture by wrongdoing should be limited to. Notably, the state did not distinguish Rolandus-G. How do you respond to the state's argument that in this case, Janik was not the victim of the crime with which your client was charged and convicted, but simply a witness and furthermore that he was in the trunk, not interfering with the crime and not interfering with escape. So what was the purpose for shooting? Well, I don't think there's a distinction. I mean, it was all one crime. The shooting, I guess depending on which version you listen to, the shooting occurred either before the sexual assault or after. As I stated in the briefs, there's different reasons that Janik could have been shot, whether it was to subdue him so he could accomplish his crime or whether to get away. I mean, it's just one of many reasons, and the state's reliance on inference shows that it can't prove that by a preponderance of the evidence that this act was done to prevent a witness from testifying at trial. As in Rolandus-G, there's no evidence that the act was done in contemplation of future trial proceedings, similar to the act of forcing the child to swear not to tell anyone. Does your concern that there has to be a prejudgment of guilt before you determine whether they committed that offense of shooting Janik, does that come into play when you have a witness as opposed to the victim? Well, I guess it depends on whether the wrongdoing is criminal. Here, obviously, if they found that the offender was one and the same as the one who shot Janik, they're finding that the offender was the same person who committed the charged crime. So I think that's indistinguishable for purposes of this case. Thank you, Your Honor. Thank you. Thank you both, counsel. Cases numbered 105-314 and 105-317.